I'm ready. May it please the court, this is Douglas Nelson on behalf of the petitioners. A note that I had previously reserved 15 minutes. I think 10 would be sufficient and I would like to reserve two minutes. I will keep my time. The petitioner fears return to one of the most dangerous places on the planet, Iraq. Contrary to what the board decided, the petitioner is not fleeing general strife, nor is his fear speculative. He is quite a remarkable person in that when American and coalition forces invaded Iraq in 2003, instead of taking Iraq's side, he chose the side of the invaders, the Americans, because he knew that they were on the right side. It's apparent that he learned this from his father, who also took the side of the Americans and worked for the Americans. Both of them in eventually worked for the Americans, assisting the US military, and both of them witnessed as members of their separate companies were threatened with death for their work. The petitioner had two colleagues kidnapped, one of them was killed, the other was released and fled the country. His father had two employees that were also threatened and kidnapped. It's interesting that the father and the son have been treated differently by the US government in that the father was granted a special immigrant visa and allowed to come to the United States, whereas the son has to go through the asylum process and so far two agencies or two parts of the same agency have said no to him. Now, in the government's answering brief, it notes that we should be precluded from raising the argument about the father's special immigrant visa. I'm not arguing, or the respondent, I'm sorry, the petitioner is not arguing that he deserves or qualifies for a special immigrant visa. Those are quite difficult to get, they're limited, they take many, many years as evidenced by the father's application process, but instead he's making the comparison. The United States awarded the father the special immigrant visa status because he risked his life for the United States and when a foreigner risks his life for our US forces, we as Americans are obligated to help that person. That was the intent of the special immigrant visa process. That same logic should apply to the petitioner's circumstances. He worked and assisted the US government, but by 2005, it became clear to him that he could not remain there, that if he continued to stay in Iraq, he would be harmed, and so he found alternative employment and went to the Emirates. Now, the government states that the petitioner went back to Iraq many times. We have to take a look, a little deeper look, as to the motives for returning and the circumstances surrounding him when he returned, but before I do that, I wanted to mention one thing. It's interesting that often it seems the authorities, the US authorities, expect a person to receive a threat and then abandon the country and never go back, and often that's what's presented in these claims, but here the petitioner felt threatened, left the country in 2005 at a time when there was still optimism, there was still hope that the circumstances might improve. He waited and ultimately he observed there was a cycle from bad to worse, from bad to worse, of different terror groups entering the sphere of combat there and threatening persons like him, the most famous being that of ISIS in 2014. Mr. Nelson, let me interrupt you for a second because I'm sure everybody understands the reasons why your client does not want to go back. Our standard of substantial evidence. So, the record, I think, reflects that Mr. Kamel had not been threatened or harmed prior to 2005 and that he's returned with security to Iraq several times thereafter. So, would you argue why those things wouldn't supply substantial evidence sufficient to support BIA? Very good. And the government has argued that that doesn't meet the objective standard of fear and we disagree with that strongly because imagine going to work and two of your colleagues are killed, kidnapped or killed, possibly killed, and then you see your father when he goes to his employment, two of his colleagues are killed. I mean, if you place yourself in that circumstance and you realize that you have the same characteristics as those men who were threatened and sometimes killed, clearly you would have the same fear. Now, I know that generally the authorities look for some clear threat that would make anyone fear return, but it's not necessary and a good example of that is that after the Christians were somewhat oppressed but not persecuted as a population, but after 2003, they became oppressed and persecuted. Now, there were many Christians who were not living there at the time, but because of the circumstances that existed there, there existed a pattern and practice of terrorists killing Christians and that allowed them to win asylum claims, whether or not they'd ever been threatened directly. This petitioner has more than that. He's got his colleagues being threatened. He also has numerous country reports that show how... Is there evidence that the other employees were targeted because of their religious faith or could it have been because they're working for the United States? It appears that it was because they worked for the United States and it's clear that the militias and the terror groups hate the United States. The government says there's no objective evidence of that in the record, but in fact at page 194, there's evidence that ISIS killed 300 people by firing squad because they were accused of promoting democracy in the country. At page 610, there's another report where the U.S. government concluded that Iraq security forces were so infiltrated by Sunni extremists and Shiite personnel that any American assigned to advise the Baghdad forces would face a risk to their lives. The same holds for these people who assisted the Americans and the proof of that is the SIV program, that we allow those There's no... Well, I hope that answers your point. I continue, but let's see and let me check my time. I apologize. I'm at eight minutes, so yeah, I'll reserve my two minutes. Mr. Nelson, before you reserve your time, are you abandoning the argument that at moderate Sunni, he was being singled out for mistreatment? No, I'm glad you asked and at page 7 of our brief, we have the seven different reasons why he fears returns and that is one of them. No, I would just simply note that each of those characteristics are enough alone to be persecuted for, or at the very least, it elevates his visibility in the community. For example, suppose he's invited to participate at a mosque that he objects to. Well, the persons who invited him are going to take a deeper look at him and if they learn of his employment with the Americans, that would be enough for them to harm him. Thank you. Mr. Nelson, are you reserving the rest of your time? Yes. Great, thank you. Mr. Kenny? Yes, Your Honor. May it please the court, I'm Brett Kenny on behalf of the Attorney General. This court should deny the petition for review because it is well established that a petitioner's fear of general conditions of violence and civil strife that affect a country's population as a whole is not a basis for relief or protection from removal. Substantial evidence supports the in this case and the record does not compel the conclusion that he is eligible for asylum, withholding of removal, or protection under the Convention Against Torture. As an initial matter, the petitioner states that he should be eligible for relief and protection from removal because he assisted the United States government, but he specifically testified on page 157 of the record that he did not work for the United States government and that he was not eligible for a special immigrant visa that his father received and on which he now relies. And notably, that reliance is misplaced for two reasons. First, because the petitioner never made any argument about it to the Board of Immigration Appeals. While he now states that he's simply making an analogy, he had to make that analogy and raise that specific legal argument to the board and he did not do so. And accordingly, this court lacks jurisdiction to consider it in the first instance because it's unexhausted. But even if it were exhausted, it lacked merit because the fact that Congress chose to extend special immigrant status to certain Iraqis who rendered faithful and valuable service and then therefore faced a serious threat does not relieve the petitioner of his individual burden of demonstrating an objectively reasonable fear of persecution. Notably, the standards for the special immigrant visa and a claim for asylum and withholding of removal are very different. The special immigrant visa required only a showing of a serious threat, whereas to meet the standard for asylum, a petitioner has to demonstrate a fear of persecution, which this court has repeatedly stated is an extreme concept that does not include every sort of mistreatment our society regards as offensive. And furthermore, the petitioner's reliance on the availability of special immigrant visas does not support importing that type of immigration benefit into an entirely different type of relief and an entirely different statutory basis for an immigration benefit. Notably, had Congress wanted to make individuals like the petitioner eligible for asylum or withholding of removal, it could have done so. It could have amended the definition of a refugee or provided a statement about persecution. For example, Congress specifically amended the definition of a refugee to encompass claims involving opposition to coercive family planning policies. But Congress did not do so. And this court should decline the petitioner's invitation to rewrite the statute and do what Congress did not. Mr. Kinney, Mr. Kinney, let me interrupt you for a second. What did you indicate that page 157, the petitioner said that it didn't work for the government? What does the record reflect about his service to the United States, if anything, over the last, since 2001? My understanding is that he first worked for, in Iraq, he worked for a company which bought new SUVs from Kuwait and then leased them to the United States military. So he was working for an Iraqi company and was not actually working directly for the United States. He then worked for, once he left Iraq and was in the United Arab Emirates, he first worked for a company as a construction engineer. But then from September 2010 to March of 2013, he worked for a U.S. company, Weatherford Oil, which was based in Dubai. And it was for that company, Weatherford, in which he made numerous return trips to Iraq over the course of more than two years. About every other month, he would return to the country that he claimed to fear being threatened or arrested, detained, tortured and killed. And yes, he voluntarily returned to that country and under this law, but he had an armed security detail. And I'm not sure that's the same thing as returning to your country to visit family or tourism. And he was at a security guard's arm who were protecting him. So is that fair to really consider that? Yes, Your Honor, because part of the petitioner's claim is that he fears harm at the hands of the Iraqi government. And so the fact that the petitioner returned numerous times to his home country and as he testified, was never harmed or threatened or had any sort of threatening interaction with a government official undermines his claimed fear of persecution from the Iraqi government, which is what this court indicated in Gu v. Gonzalez in rejecting a petitioner's claim of a well-founded fear of persecution. This court specifically noted that the petitioner had been able to travel freely without any interference from government officials, even though in that case, government officials had come to the petitioner's house looking for him. The evidence here is much less than that, where the petitioner specifically testified that he never had any adverse interaction with the United States or with the Iraqi government. And therefore, the fact that he continued to return to that country undermines his claim of an objective fear of future persecution to the extent that the petitioner argues that he had the exact same characteristics as his co-workers. Just going back, if we don't consider those trips to Iraq, is there still sufficient evidence to support the denial of asylum here? Yes, Your Honor, substantial evidence does support the agency's conclusion that first, the petitioner did not have an individualized risk of persecution because he was never singled out for harm by anyone that he claims to fear. He never experienced any harm, and he was never even threatened with any future harm by any individual. Notably, he specifically testified on page 150 of the record that he had never experienced political and religious opinions, and yet nobody had ever threatened him for expressing such opinions. He also testified that nobody had ever tried to kidnap him, and nobody ever directly threatened him. He also specifically testified that his father had not actually been threatened. So to the extent that he relies on the fact that individuals who work for his father's the company, the same company that he worked with, does not undermine the agency's decision that the petitioner failed to demonstrate an objectively reasonable fear of persecution. And while two individuals that worked for the same company as the petitioner were kidnapped, and the petitioner claimed that he had the exact same characteristics, in fact, those individuals were Shia Muslims, and the petitioner specifically testified that he did not, he wasn't present when they were kidnapped, and he did not know what, if anything, was said to those individuals. And furthermore, ransom demands were made in those cases, which accords with the 2015 country report statement that most kidnappings and disappearances are financially motivated. So there is no evidence that compels the conclusion that those individuals, much less the petitioner, would be or were harmed on account of any association with the West or a company that was providing vehicles to the United States military. And as with his fear of harm from the Iraqi government, his fear of harm from terrorists is also speculative. Again, the petitioner was never harmed or threatened by any of the groups he claims to fear. Instead, he simply relies on evidence of generalized strife and violence. And under this court's case law, such evidence is insufficient to demonstrate a fear of, an objectively reasonable fear of persecution. Again, the record does not compel the conclusion that the petitioner faces a situation in Iraq that is appreciably different from that of his fellow citizens. And the petitioner also fails to demonstrate a pattern or practice of persecution against similarly situated individuals. Again, the petitioner does not point to any evidence in his opening brief of such a pattern or practice of persecution of people associated with the West.  And to the extent that the petitioner still maintains that there is a pattern or practice of persecution against moderate Sunni Muslims, it's true the record does contain evidence of violence against such persons, but it's primarily in the context of showing indiscriminate and general strife, which again, is not a basis for asylum or withholding of removal. Notably in Wakari Beholder, this court rejected a claim of a pattern or practice of persecution against ethnic Chinese Christians in Indonesia, explaining that even if a large number of people have suffered discrimination or mistreatment, and even if some of those people experience harm rising to the level of persecution, that was not sufficient to demonstrate a pattern or practice, which this court has called as requiring evidence of systemic persecution. And that is the situation in this case as well. And notably, the record contains contrary evidence. For instance, the 2012 Religious Freedom Report provides that the government generally respected the religious freedom of its citizens in practice, and that the government continued to call for tolerance and acceptance of all religious minorities. In short, the agency weighed the evidence in the record, including the evidence of violence and civil strife affecting Iraq, and concluded that the petitioner did not demonstrate an objectively reasonable fear of persecution. Under the substantial evidence standard, this court may not reweigh the evidence or substitute its judgment for that of the agency. And substantial evidence supports its decision, both that the petitioner is not eligible for asylum or withholding of removal, or that the petitioner is eligible for cap protection. As to the petitioner's past claim, he claims the petitioner never experienced torture in his home country. And in the absence of past torture, his reliance on generalized evidence of violence and crime is insufficient to satisfy the standard for cap protection, which this court has stated in Delgado-Ortiz v. Holder and Riera v. Lynch. And as with his claims for persecution, the fact that the record contains indications that torture does occur is insufficient, standing alone to compel the conclusion that this petitioner faces a clear probability of torture in his home country. If the court has no further questions, thank you. Thank you. Mr. Nelson? Thank you. It's interesting that the petitioner did work for the U.S. government. In one of the TATAS zones, he was assigned to work at the Baghdad airport in the green zone, which was protected by the U.S. military. That same area had suffered numerous rocket attacks, as long as the Americans were there. So clearly, he was affiliated with the Americans. And if anybody knows of that employment, then they may want to persecute him for that. Government counsel noted that the respondent voluntarily returned to Iraq after he departed in 2005. The word voluntary, I don't think quite fits, because if the respondent had not returned to Iraq, he likely would have lost his job and his sponsorship. And his temporary residence was entirely based upon that job, meaning that if he had not gone back with that security detail, he would have lost his job, and he would be forced to go to the only country where he had the ability to permanently resettle, which is Iraq. And so it wasn't entirely voluntary that he was going back. Government counsel noted that some of the reports show indiscriminate harm against Sunnis. I also disagree with the word indiscriminate, as the country reports show a Sunni mosque will be bombed, and then a Shiite mosque will be bombed, and it goes back and forth. They are being targeted for their religious differences. And one last point, I'm almost to the two-minute mark. The father was, government counsel correctly notes that the father was not threatened, but nevertheless received the protection from the United States. And that protection was granted to the petitioner's mother and the petitioner's brother. Likewise, we should use that and compare it to this petitioner's circumstances, and afford him the same protection because his life will be threatened upon returning to his country. Thank you. That's my time. Mr. Nelson, let me ask you one question, and we're all very sympathetic to the situation your client's in, but you just made reference to the widespread or lack thereof of the abuses between the Shia and the Sunni, and the 2015 country report also stated that there are human rights abuses against the Kurds, and against the Christians, and against women, and against children, and so moderate Sunnis aren't singled out for some pattern or practice of persecution. Isn't that? Yeah, it's an interesting point, your honor. And in fact, that's true of ISIS. They harmed anybody who disagreed with them. But ISIS isn't the only group that has been threatening the Iraqi people. And like I said, it's cyclical. We had groups such as Jesh al-Mahdi, later Ansar al-Sunnah, al-Qaeda in Iraq. They just keep coming back, and back, and back. Usually with the same ideology of persecuting persons who differ from them. And in this instance, the respondent has listed seven reasons why they would want to harm him, page seven of his brief. So, he just needs to be persecuted for one of those. The persecutor has to decide which one is most important to them, and they may have different reasons for selecting so. But he's shown, by what happened to his colleagues, and by the country reports, that people in similar situations as him are being persecuted on account of those reasons. All right. Thank you. Thank you. Case has been submitted.
judges: Fernandez, Lee, Orrick